**SUPERVALU, INC., Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

Civ. 3–96–447.

United States District Court,
D. Minnesota,
Third Division.

Dec. 10, 1997.

Christopher T. Shaheen, Dorsey & Whitney, LLP, Minneapolis, MN, for plaintiff.

Seth G. Heald, U.S. Dept. of Justice, Tax Division, Washington, DC, for defendant.

## ORDER

MacLAUGHLIN, District Judge.

This matter is before the Court on cross-motions for summary judgment.

### FACTS

The plaintiff, SuperValu, Inc., claimed income tax credits ("ITC") in 1987 and 1988 for "tangible personal property" pursuant to 26 U.S.C. § 48(a)(1)(A) (Internal Revenue Code or "the Code").[1] The claimed personal property included several central refrigeration systems installed in SuperValu warehouses. The Internal Revenue Service ("IRS") denied the credits finding that the refrigeration systems are not "tangible personal property" but instead are "structural components" of a building within the meaning of 26 C.F.R. § 1.48–1(e)(2) (Treasury Regulations on Income Tax). SuperValu paid the tax and interest and then brought this action seeking a refund (after first filing the necessary administrative claims with the IRS).

The refrigeration equipment in question is composed of compressors, evaporators, condensers, valves, pipes, vessels and controls. Each refrigerated room contains at least one evaporator, and all the evaporators in a single warehouse are connected by pipes and other parts to compressors. The compres-

---

1. The § 48 ITC was repealed by § 211(a) of the Tax Reform Act of 1986, Pub.L. No. 99–514, 100 Stat. 2085. However, the applicable transition rules render the ITC available for the property at issue in this case.

sors are together in one control room. The compressors are connected by pipes to condensers which are on the roof above the control room. Together all of the components constitute a closed cycle through which refrigerant circulates.

Each of the warehouse facilities involved in this case contains this basic refrigeration system, though each system was specially designed by engineers for the different temperature needs and usages of each particular warehouse. SuperValu's refrigeration needs are exclusively for preservation and storage of perishables and serve no other purpose, such as processing or preparation of food, or comfort cooling. The degree of refrigeration required varies depending on the specific product to be stored, from dry goods requiring a constant low humidity to ice cream or other frozen foods requiring a below freezing temperature. Most of the warehouses in question contain separate air conditioning systems for comfort cooling.

Though most of the components of the systems are fixed in place, they are not so permanent that removal is impossible without damaging the building. In fact, SuperValu has from time to time removed a refrigeration system to make a building suitable for non-refrigerated storage.

These facts surrounding the nature and function of SuperValu's refrigeration system are simple and undisputed. The Court's task is to answer the legal question of whether these refrigeration systems constitute tangible personal property or structural components of the warehouse buildings, for purposes of the statutory income tax credit at issue.

## DISCUSSION

A movant is not entitled to summary judgment unless the movant can show that no genuine issue exists as to any material fact. Fed.R.Civ.P. 56(c). In considering a summary judgment motion, a court must determine whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The role of a court is not to weigh the evidence but instead to determine wheth-

er, as a matter of law, a genuine factual conflict exists. *AgriStor Leasing v. Farrow,* 826 F.2d 732, 734 (8th Cir.1987). "In making this determination, the court is required to view the evidence in the light most favorable to the nonmoving party and to give that party the benefit of all reasonable inferences to be drawn from the facts." *AgriStor Leasing,* 826 F.2d at 734. When a motion for summary judgment is properly made and supported with affidavits or other evidence as provided in Fed.R.Civ.P. 56(c), then the nonmoving party may not merely rest upon the allegations or denials of the party's pleading, but must set forth specific facts, by affidavits or otherwise, showing that there is a genuine issue for trial. *Lomar Wholesale. Grocery, Inc. v. Dieter's Gourmet Foods, Inc.,* 824 F.2d 582, 585 (8th Cir.1987), *cert. denied,* 484 U.S. 1010, 108 S.Ct. 707, 98 L.Ed.2d 658 (1988). Moreover, summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## I. Applicable Statutory Provisions

The investment credit at issue in this case allows ten percent of the taxpayer's "qualified investment" to be directly offset against income tax liability. *See* 26 U.S.C. §§ 46, 48. The taxpayer's "qualified investment" is a percentage of "Section 48 property" placed in service during the given tax year. See 26 U.S.C. § 46(c)(1). "Section 48 property" includes:

(A) tangible personal property (other than an air conditioning or heating unit), or

(B) other tangible property (not including a building and its structural components) but only if such property

(i) is used as an integral part of manufacturing, production, extraction or of furnishing transportation, communications, electrical energy, gas, water, or sewage disposal services, or

(ii) constitutes a research facility used in connection with any of the activities referred to in clause (i), or

(iii) constitutes a facility used in connection with any of the activities referred to in clause (i) for the bulk storage of fungible commodities (including commodities in a liquid or gaseous state) ***.

See 26 U.S.C. § 48(a)(1).

"Tangible personal property" is defined as:

(c) any tangible property except land and improvements thereto, such as buildings or other inherently permanent structures (including items which are structural components of such buildings or structures). Thus, buildings, swimming pools, paved parking areas, wharves and docks, bridges, and fences are not tangible personal property. Tangible personal property includes all property (other than structural components) which is contained in or attached to a building. Thus, such property as production machinery, printing presses, transportation and office equipment, refrigerators, grocery counters, testing equipment, display racks and shelves, and neon and other signs, which is contained in or attached to a building constitutes tangible personal property for purposes of the credit allowed by section 48. Further, all property which is in the nature of machinery (other than structural components of a building or other inherently permanent structure) shall be considered tangible personal property even though located outside a building. Thus, for example, a gasoline pump, hydraulic car lift, or automatic vending machine, although annexed to the ground, shall be considered tangible personal property.

See 26 C.F.R. § 1.48–1(c).

"Structural components" is defined as:

(e)(2) such parts of a building as walls, partitions, floors, and ceilings, as well as any permanent coverings therefor such as paneling or tiling; windows and doors; all components (whether in, on, or adjacent to the building) of a central air conditioning or heating system, including motors, compressors, pipes and ducts; plumbing and plumbing fixtures, such as sinks and bathtubs; electric wiring and lighting fixtures; chimneys; stairs, escalators and elevators, including all components thereof; sprinkler systems; fire escapes; and other components relating to the operation or maintenance of a building.

See 26 C.F.R. § 1.48–1(e)(2). The definition of "structural components" also provides an exception.

The "sole justification exception" excludes from the definition of structural components: machinery the sole justification for the installation of which is the fact that such machinery is required to meet temperature or humidity requirements which are essential for the operation of other machinery or the processing of materials or foodstuffs. Machinery may meet the 'sole justification' test provided by the preceding sentence even though it incidentally provides for the comfort of employees, or serves, to an insubstantial degree, areas where such temperature or humidity requirements are not essential. For example, an air conditioning or humidification system installed in a textile plant in order to maintain the temperature or humidity within a narrow optimum range which is critical in processing particular types of yarn or cloth is not included within the term "structural components."

*Id.*

## II. Analysis

The outcome of this dispute turns on where the central refrigeration systems at issue fit within these definitions. SuperValu contends that the refrigeration systems constitute tangible personal property. The government argues that the refrigeration systems are structural components of the warehouse buildings.

The government raises essentially three arguments in support of its contention that the refrigeration systems are structural components of buildings. First, the government relies on the fact that refrigeration systems are analogous to air conditioning systems, the latter of which are specifically excluded from the Code's definition of Section 48 tangible personal property, and expressly in-

cluded in the Treasury regulations definition of structural components.

Second, the government argues that if refrigeration systems can be considered tangible personal property, then the sole justification exception is superfluous. In other words, in order for temperature and humidity control systems to be an exception to the definition of structural components, then ordinarily temperature and humidity control systems must be considered structural components. Third, the government relies on the Tax Court's decision in *Loda Poultry Co., Inc. v. Commissioner of Internal Revenue*, 88 T.C. 816, 831–33, 1987 WL 49301 (1987).

The government's reliance on the similarity in the operating procedures of refrigeration and air conditioning systems overlooks two paramount factors. First, although the statute specifically lists an air conditioning system as an example of items which are structural components, and although refrigeration systems function by a nearly identical mechanism, that provision of the statute ends significantly with the phrase "and other components *relating to the operation or maintenance of a building.*" *See* 26 C.F.R. § 1.48–1(e)(2) (emphasis added).

It is plain that the reason an air conditioning system is expressly listed as an example of a structural component is because air conditioning systems relate to the operation or maintenance of the building. That the system is made up particularly by a network of connected components controlled by a central mechanism is less important than the fact that the system's purpose relates to the operation and maintenance of the building. The distinction is illustrated by the fact that removing central air conditioning systems from a building is uncommon, whereas removing a refrigeration system can be and is accomplished to put the building to a different type of storage use.

As the statute contemplates, comfort cooling systems are inherently integrated into the normal functioning of a building, regardless of other simultaneous uses of the building. The parties do not dispute that central air conditioning systems are perceived, expressly by the statute and plainly in general, to be inherent structural components of a building, related to the basic functioning of the building.

On the contrary, refrigeration systems have nothing to do with the basic operation or maintenance of the building, as evidenced by the fact that refrigeration systems can be and are removed without damaging the building or altering it in a manner integral to the building, such as climate control for human occupants. Moreover, it is undisputed that most of the warehouses at issue contain a refrigeration system and a separate air conditioning system. The Court finds that while temperature control is accomplished by each system, only one of them, the air conditioning system, relates to the operation and maintenance of a building, while the other, the refrigeration system, does not.

Another factor overlooked by the government is the function test. In *Loda Poultry*, 88 T.C. at 824, a case in which one issue was whether or not an asset constituted a building or tangible personal property for purposes of the § 48 ITC, the Tax Court held that courts must look to both the appearance and function of an item of property to determine whether the property constitutes a building. Further, the *Loda* court held that as opposed to the appearance of an asset, "courts have generally regarded the function of the asset as the more important test." *Id.*, citing *Munford, Inc. v. Commissioner of Internal Revenue*, 87 T.C. 463, 479–80, 1986 WL 22010 (1986) (a refrigerated *building* does not constitute tangible personal property), *aff'd*, 849 F.2d 1398 (11th Cir.1988) (emphasis added). The Court of Appeals for the Eighth Circuit adopted a broad version of the function test in *L & B Corp. v. Commissioner of Internal Revenue*, 862 F.2d 667, 671 (8th Cir.1988). In *L & B*, the Court held that the appropriate test for determining whether or not a structure constituted a building for purposes of the § 48 ITC is whether the structure *resembles* a building, and whether it *functions* as a building *or as something else*, such as a piece of equipment. *Id.* at 672–674.

Although the *L & B*, *Loda* and *Munford* analyses addressed whether or not an asset constituted a *building*, the same Section 38 income tax credit was at issue. Title 26 U.S.C. § 48(a)(1)(B) and 26 C.F.R. § 1.48–

1(c) each provide that if the asset is not a building, it may yet be disqualified from ITC eligibility by virtue of its status as a structural component of a building.[2] Therefore, the Court finds that the appearance and function tests similarly apply to determining whether an asset is a *structural component* for purposes of the income tax credit.

SuperValu's refrigeration systems *appear* to relate to the operation and maintenance of a warehouse building inasmuch as the systems "look" and operate as an air conditioning system, which is statutorily deemed a structural component (unless satisfying the sole justification exception).

More helpful is the function test. Plainly, the refrigeration systems at issue serve no function other than preserving perishable food items. They do not incidentally provide comfort cooling or serve another secondary purpose. The refrigeration systems function exclusively for a particularized use of the warehouses, are installed semi-permanently, and operate independently of the underlying buildings. In contrast, an air conditioning system is permanent and may serve multiple primary and incidental purposes, and in any event is basic for most any human use of a warehouse, regardless of the specific business purposes of the building users.

The government makes the argument that if a refrigeration system can be something other than a structural component, then the sole justification exception for temperature and humidity control systems with a specific and exclusive product processing purpose is meaningless. However, the sole justification exception could apply to an air conditioning system that had as its primary purpose cooling for processing but incidentally provided comfort cooling.

The Court agrees with SuperValu's characterization that the sole justification exception applies only after an asset has been determined to be a structural component. In the case at bar, the Court finds that it need not determine whether the sole justification exception applies to SuperValu's refrigeration systems [3] because the systems do not constitute structural components within the meaning of 26 C.F.R. § 1.48–1(e)(2).

Finally, the government argues that *Loda Poultry* stands for the proposition that centralized refrigeration systems, as opposed to individual room refrigeration units, are structural components ineligible for the Section 48 income tax credit, unless the system satisfies the sole justification exception. It should be noted that the *Loda Poultry* court held that the centralized refrigeration system in that case did not satisfy the sole justification exception.[4] *See Loda Poultry*, 88 T.C. at 833.

*Loda Poultry* fails to provide adequate guidance on the subject in two respects. First, the opinion does not explain why the refrigeration system in that case constituted structural components. The sole justification test is simply applied directly.[5] The opinion relies on the fact that the system was centralized, but neglects to explain why centralization makes a difference. The opinion offers no support for finding a legally relevant distinction between individual room refrigeration units and centralized refrigeration systems, and fails to explain why the sole justification exception was invoked.

Second, the opinion uses the narrow function test specifically required of the sole jus-

---

**2.** "[N]ot including a building and its structural components," Title 26 U.S.C. § 48(a)(1)(B); and "except [ ] buildings or other inherently permanent structures (including items which are structural components of such buildings or structures)." 26 C.F.R. § 1.48–1(c).

**3.** In any event the parties do not dispute that the sole justification exception would not and does not apply to SuperValu's refrigeration systems because the refrigeration is required exclusively for preservation and not processing.

**4.** "[T]he air cooled condenser and commercial engine *do not satisfy the exceptions of section* 1.48–1(e)(2), Income Tax Regs., since the sole justification for the installation of the asset is not for the operation of other machinery or processing of materials or foodstuffs." *Loda Poultry*, 88 T.C. at 833.

**5.** "[A]s best we can determine [ ] the system is entirely connected and operated by one large commercial engine. While the photographs do not reveal large vents or air conduits, the system is connected with pipes to each of the condensers. Thus, the system appears to be a CENTRAL refrigeration system. Accordingly, we believe that these facts differ from those in [Revenue Ruling 81–240]. Thus, the [refrigeration components] do not satisfy the [sole justification] exceptions." *Loda Poultry*, 88 T.C. at 833 (emphasis original).

tification exception, that is, that the sole function of the asset must be processing.[6] Yet just three paragraphs earlier the opinion refers to Revenue Ruling 81–240 which determined individual room refrigeration units satisfied the function test and were accordingly excluded from the definition of structural components. *Loda Poultry*, 88 T.C. at 832.

The *Loda* court appears to have misinterpreted the significance of the fact that Revenue Ruling 81–240 did not consider the sole justification exception. Instead of following the plain formula of the statute, *Loda Poultry* applied the sole justification exception test without first determining whether the asset constituted a structural component. Indeed, the *Loda* court apparently understood the sole justification exception as a separate element of the regulation requiring application in every situation.[7]

This Court does not agree that Revenue Ruling 81–240 overlooked analysis of the sole justification exception in error. The Tax Court in *Loda Poultry* erred when it jumped to the sole justification test and ignored the order and plain language of the regulations, which clearly provide that the question of whether an asset is a structural component is a primary inquiry. In any event, the Eighth Circuit Court of Appeals subsequently resolved the issue when it recognized the asset function test in *L & B Corp.*, 862 F.2d at 671; *see supra* page 8.

Using the asset function test, the *Loda* court should first have determined whether the refrigeration units at issue there were structural components before applying the sole justification test. The government argues that the *Loda* court did make that determination and found that because the systems at issue were centralized they constituted structural components and not tangible personal property. However, this Court finds no language in the *Loda* opinion indicating that such an analysis was made.

**6.** *See supra* note 4.

**7.** "Curiously enough, [Revenue Ruling 81–240] appears to have ignored this aspect [the sole justification exception] of the regulation. While the ruling cites section 1.48–1(e)(2), Income Tax Regs., it never considers the requirements of the

## CONCLUSION

The Court finds that the centralized refrigeration systems in this case are not structural components of a building within the meaning of 26 C.F.R. § 1.48–1(e)(2) because they do not relate to the operation or maintenance of SuperValu's warehouses. The Court also finds that the refrigeration systems at issue constitute tangible personal property within the meaning of 26 C.F.R. § 1.48–1(c). Accordingly, SuperValu is entitled to the income tax credit under 26 U.S.C. sections 46(c)(1) and 48(a)(1)(A).

Based on the foregoing and the files, records, and proceedings herein, it is ordered:

1. The plaintiff's motion for summary judgment is GRANTED;
2. The government's motion for summary judgment is DENIED; and
3. Plaintiff is entitled to a federal income tax refund for credits earned in fiscal years 1987 and 1988, in the amount of $1,114,297.90, plus statutory interest.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

'sole justification' test. While neither party raised this inconsistency ..." *Loda Poultry*, 88 T.C. at 832. More than likely neither party raised the inconsistency because neither party viewed it as an inconsistency nor anticipated applicability of the sole justification exception.